2003 ND 21

**FIRST WESTERN BANK & TRUST, Plaintiff**

v.

**FIRST LUTHERAN CHURCH FOUNDATION,** Salvation Army–Ward County Chapter, Trinity Hospital, Model High School Alumni Association, Kirsten Marquardt, Michelle Marquardt, Daniel Templeton, Miles Templeton, Darrel Templeton, Sonia Armour, Paul Marquardt and Rodger Marquardt, Defendants,

**Paul Marquardt, Defendant and Appellant,**

and

**Rodger Marquardt, Defendant and Appellee.**

No. 20020170.

Supreme Court of North Dakota.

Feb. 19, 2003.

Dean A. Frantsvog, Olson Burns Lee, Minot, N.D., for defendant and appellant.

Robert S. Rau, Bosard, McCutcheon & Rau, Ltd., Minot, N.D., for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Paul Marquardt appealed from a judgment which ordered that the proceeds of his deceased mother's annuity belonged solely to Rodger Marquardt and effectively denied Paul's motion to amend a prior memorandum opinion or, in the alternative, grant a new trial. We conclude the trial court did not abuse its discretion in failing to amend or grant a new trial, and we affirm.

## I

[¶ 2] In 1996, Laura O. Marquardt purchased an annuity from New York Life Insurance Company ("New York Life"). On March 2, 1998, Laura executed a last will and testament devising her property to her two sons, Paul and Rodger, her grandchildren, and various charities and other entities. Under the terms of the will, Paul and Rodger were to receive equal shares of a percentage of the estate. On July 26, 1999, Laura executed a codicil to the will which provided:

*SONS TO SHARE EQUALLY EX-CEPT AS TO ANNUITY CONTRACT:* I believe that the Annuity is set up so that it is payable on my death to my son RODGER MARQUARDT. In any event, I give and bequeath the said An-nuity Contract with New York Life Insurance Company, which presently has a value of more than $50,000.00 to my son RODGER MARQUARDT. It is my intention that the rest of my estate is to be shared equally between my sons. In the event that at the time of my death I hold any of my assets in an account or ownership so that an asset becomes payable to either RODGER or PAUL because of a joint tenancy, right of survivorship, payable on death clause or similar clause so that the asset does not come under the management of my Personal Representative, then I ask as to such property items, they be taken into account and computation be made in the distribution of my estate so that each of my sons share equally from my estate save and except that RODGER is to have the entirety of the Annuity Contract. I give this advantage to my son RODGER to balance out on account of help previously given to our son PAUL.

[¶ 3] On August 18, 1999, Laura entered into a revocable trust agreement with First Western Bank & Trust Company ("First Western") to manage her financial affairs. At that time, Laura also executed a durable power of attorney giving First Western power and authority to act as her attorney in fact. On October 5, 1999, Laura and Paul met with the trust officer who subsequently had ownership of the annuity transferred to Laura's trust and the beneficiary of the annuity changed.

[¶ 4] Laura died on February 7, 2001, and First Western was appointed personal representative of her estate. First Western collected the proceeds of the annuity and placed them in the trust. On October 2, 2001, First Western petitioned the court for determination of testacy, settlement and confirmation of distribution of the estate. First Western proposed distributing

the $57,846.05 proceeds of the annuity according to the trust provisions.

[¶ 5] Rodger was the only interested person to file an objection to the proposed distribution. Rodger alleged the durable power of attorney did not authorize First Western to change the ownership and beneficiary of the annuity. Rodger claimed that, under the July 26, 1999 will codicil, he was entitled to the entire proceeds of the annuity. At the hearing on the objections, Paul testified on behalf of First Western. On January 31, 2002, the trial court issued a memorandum opinion ruling that the durable power of attorney did not authorize First Western to change the annuity,[1] that the will codicil controlled the disbursement of the annuity proceeds, and that Rodger was entitled to 100 percent of the annuity proceeds.

[¶ 6] On February 27, 2002, Paul moved to amend the memorandum opinion or, in the alternative, for a new trial "to properly consider all of the evidence in this matter which was not presented at the hearing held previously." Paul argued the annuity was a payable on death ("P.O.D.") account under N.D.C.C. § 30.1–31–09(2)(b), and under N.D.C.C. § 30.1–31–10(2), a right of survivorship arising from the express terms of that account may not be altered by will. In support of the motion, Paul presented a copy of an "APPLICATION FOR A FLEXIBLE PREMIUM DEFERRED VARIABLE ANNUITY" from New York Life dated December 26, 1996, showing Laura as the owner and Rodger and Paul as co-beneficiaries each listed as having a 50 percent interest in the proceeds, but did not provide the court with a copy of the annuity contract itself. Paul argued that he was entitled to 50 percent of the annuity proceeds.

[¶ 7] The trial court issued an order and judgment on May 23, 2002. The court did not amend the memorandum opinion or grant a new trial and ordered that Rodger was entitled to 100 percent of the annuity proceeds.

## II

[¶ 8] We will treat the trial court's entry of judgment consistent with its memorandum opinion without specifically addressing Paul's motion to amend or to grant a new trial as a denial of the motion. *See Triple Quest, Inc. v. Cleveland Gear Co.*, 2001 ND 101, ¶ 14, 627 N.W.2d 379. We do not reverse the denial of a motion to amend a judgment or motion for a new trial unless the trial court abused its discretion. *Jarvis v. Jarvis*, 1998 ND 163, ¶ 8, 584 N.W.2d 84. A trial court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law. *Howes v. Kelly Services, Inc.*, 2002 ND 131, ¶ 13, 649 N.W.2d 218.

[¶ 9] Paul claims the trial court erred in failing to grant the motion because the post-trial evidence he offered renders the issues addressed at the hearing moot. Paul argues the annuity qualifies as a nonprobate asset because, under N.D.C.C. § 30.1–31–10(2), a right of survivorship arising from the express terms of an account or a P.O.D. designation may not be altered by a will. *See Estate of Peterson*, 1997 N.D. 48, ¶ 11, 561 N.W.2d 618; *Estate of Leier*, 524 N.W.2d 106, 109–10 (N.D.1994). Although none of the parties raised this argument or presented the court with the annuity at the hearing, Paul

---

1. Neither party has raised this issue on appeal. We do not consider issues that have not been raised and argued by the parties. *See Roise v. Kurtz*, 1998 ND 228, ¶ 11, 587 N.W.2d 573.

argues the trial court was under a duty to have ordered either production of the annuity or a further evidentiary hearing so it could apply the correct law. We reject this argument for several reasons.

[¶ 10] First, the parties have the primary duty to bring to the court's attention the proper rules of law applicable to a case. *State v. Goulet,* 1999 ND 80, ¶ 10, 593 N.W.2d 345. As this Court said in *Burkstrand v. Rasmussen,* 77 N.D. 716, 718, 45 N.W.2d 485, 487 (1950):

> Counsel in a lawsuit have the advantage of being able to become fully informed on the law of the case. The trial judge does not always have the opportunity to make as thorough an investigation of the law of the case as counsel, and must necessarily depend upon counsel to call the attention of the court to the law applicable to the case ...

The trial court will not be faulted for failing to identify what Paul claims to be the dispositive issue when the parties did not bring it to the court's attention at the hearing. *See Berg v. Ullman ex rel. Ullman,* 1998 ND 74, ¶ 44, 576 N.W.2d 218 (Neumann, J., dissenting).

[¶ 11] Second, we recognize some courts have held that particular annuity contracts are nonprobate transfers and do not become a part of the decedent's estate. *See Abernethy v. Abernethy,* 611 So.2d 1021, 1023 (Ala.1992); *Estate of Petersen,* 28 Cal.App.4th 1742, 34 Cal.Rptr.2d 449, 458 (1994). Other courts, including this Court, appear to have assumed, without specifically addressing the issue, that annuities are nonprobate transfers. *See Bergheger v. Boyle,* 258 Ill.App.3d 413, 196 Ill.Dec. 324, 629 N.E.2d 1168, 1171 (1994) (noting annuities did not become part of decedent's probate estate); *Succession of Lee,* 831 So.2d 477, 478 (La.Ct.App.2002) (noting annuity did not become part of probate estate); *Estate of Brown,* 1997

ND 11, ¶ 8, 559 N.W.2d 818 (referring to "non-probate annuities"). However, the courts in *Abernethy* and *Petersen,* cases in which the issue was specifically raised and decided, relied heavily on the language of the annuity contracts at issue in reaching the conclusions the respective annuities were nonprobate transfers that did not become part of the probate estate. In his post-trial motion, Paul merely presented the court with the application for the New York Life annuity rather than the annuity contract itself. Under the reasoning of *Abernethy* and *Petersen,* the trial court would not have had sufficient evidence to decide the issue.

[¶ 12] Finally, even if Paul had offered the annuity contract in support of his motion, it would not have constituted newly discovered evidence. Before a new trial can be granted on the ground of newly discovered evidence under N.D.R.Civ.P. 59(b)(4), it must be shown: 1) the evidence was discovered following trial; 2) the movant must have exercised due diligence in discovering the evidence; 3) the evidence must not be merely cumulative or impeaching; 4) the evidence must be material and admissible; and 5) the evidence must be such that a new trial would probably produce a different result. *Johnson v. Johnson,* 2001 ND 109, ¶ 6, 627 N.W.2d 779.

[¶ 13] This Court's decision in *Perry v. Reinke,* 1997 ND 213, 570 N.W.2d 224, is instructive. In that case, Reinke, the personal representative of an estate, appealed from a jury verdict finding the decedent's last will and testament invalid as the product of undue influence exerted by Reinke. *Id.* at ¶¶ 1, 10. During the trial, Reinke and another person were alleged to be the beneficiaries of more than $100,000 in nonprobate transfers. *Id.* at ¶ 26. Reinke moved for a new trial based on newly discovered evidence, arguing she had for-

**730**

gotten during trial that she had transferred the nonprobate assets into the estate, and supported the motion with bank records proving she made the transfers into the estate account before trial. *Id.* In concluding the trial court did not abuse its discretion in denying Reinke's motion, we said:

> Although the money reported in the bank records was at issue during the trial, their production after trial is not newly discovered evidence when they were easily discoverable by Reinke before the trial commenced. As this Court said in *Baird v. Kensal Light & Power Co.*, 63 N.D. 88, 246 N.W. 279, 283 (1932), "[i]t is not enough to present a showing [ ] he did not know, ... the materiality of the evidence. It is the evidence itself, and not merely its materiality which must appear to have been newly discovered." *Id.* (Citation and quotation omitted). *See also* 66 C.J.S. *New Trial* § 101 (1950) (stating "[i]n order to warrant a new trial it must appear [ ] [the] evidence is in fact newly discovered, and not merely the importance of it ...."). Moreover, the bank records, while possibly material, are not strong enough evidence to produce a different result in a new trial....

> In preparing for trial, a party must marshal all of the available evidence through discovery proceedings. Failure to do so will not be forgiven in a motion for new trial.

*Id.* at ¶¶ 28, 29.

[¶ 14] In this case, Paul offered no explanation why the annuity contract was not and could not have been produced at the hearing. Paul's discovery of the importance of the evidence after the hearing is insufficient to warrant a new trial.

[¶ 15] We conclude the trial court did not abuse its discretion in failing to amend the judgment or grant a new trial.

III

[¶ 16] The judgment is affirmed.

[¶ 17] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.